UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

DOUGLAS CORNELL JACKSON,

              Plaintiff,

v.

HEATHER POWELL et al.,

              Defendants.

_____/

Case No. 1:18-cv-466

Honorable Robert J. Jonker

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendant Washington. In addition, the Court will dismiss Plaintiff's access-to-the-courts, Eighth Amendment, due process, and equal protection claims for failure to state a claim. The Court will serve the remaining portions of the complaint against Defendants Powell, Brant, Lahr, Conklin, Salinas, Elliot, Watkins, and Simon.

## Discussion

### I.    Factual allegations

Plaintiff presently is incarcerated with the Michigan Department of Corrections (MDOC) at the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues MDOC Director Heidi Washington and the following ICF officials: Prison Counselor Heather Powell; Correctional Officers (unknown) Brant, (unknown) Lahr, (unknown) Elliot, (unknown) Watkins, and (unknown) Simon; and Sergeants (unknown) Conklin and (unknown) Salinas.

The instant action is the fourth prisoner civil rights case filed by Plaintiff in this district in 2018, and the eighth such action filed during his incarceration either in this district or in the Eastern District of Michigan. Plaintiff's 58-page complaint raises claims about alleged violations of his rights to access the courts, to due process, to equal protection, and to freedom from cruel and unusual punishment. The facts alleged in the complaint appear to concern every matter with which Plaintiff has been unhappy between the date he was transferred to ICF (March 13, 2018), and the date he filed his complaint (April 24, 2018). The organization of the complaint presents real challenges to understanding the specifics of Plaintiff's constitutional claims, as Plaintiff repeatedly makes general allegations without naming Defendants, but then references earlier paragraphs, requiring the Court to move back and forth through the lengthy complaint. The Court has constructed the following summary of the claims, as they fall under differing constitutional theories.

Plaintiff's principal complaint centers on his limited access to his admittedly voluminous legal materials, due to his assignment to Security Classification Level V[1] and placement in the "Start Unit," which is a pilot program of "alternative placement for eligible prisoners who would otherwise be classified to administrative segregation." *See* Mich. Dep't of Corr. Director's Office Mem. 2018-22 (Dec. 20, 2017), https://www.michigan.gov/documents/corrections/DOM_2018-22_Start_Unit_609800_7.pdf (last visited on June 22, 2018). Plaintiff contends that, before coming to ICF, he purchased two blue legal footlockers in which to store his legal materials. In May 2017, again prior to his arrival at ICF, a hearings officer determined that Plaintiff's voluminous legal property was allowable as excess legal property. Plaintiff complains that, under the Start-Unit policy developed by Defendant Washington, he is not allowed to keep his footlockers in his ICF cell until his behavior allows him to move to a higher stage of the program, which would provide him additional privileges. He also complains that the prison mail policy permits guards to destroy envelopes Plaintiff receives from the courts, which prevents him from using an envelope system to organize his legal materials. Further, Plaintiff alleges that Defendant Powell has refused on multiple occasions to authorize Plaintiff's indigent request for 10" X 15" envelopes, which would help him organize his legal materials. Together, the policies adopted by Defendant Washington and Defendant Powell's actions in not allowing Plaintiff access to large envelopes result in Plaintiff's hundreds of loose-leaf pages of legal materials being mixed up and disordered whenever his cell is searched.

---

[1] In the MDOC, security classifications, from least to most secure, are as follows: Levels I, II, IV, V, and administrative segregation. MDOC Policy Directive 05.01.130 ¶ B (Oct. 10, 2011).

Defendant Brant gave Plaintiff his non-legal property on March 15, 2018, two days after Plaintiff arrived at ICF. When Plaintiff asked for his legal property, Brant refused, telling Plaintiff that he had filed a lot of lawsuits against other officers. That same day, Plaintiff asked Defendant Powell for the legal property, and she responded that he should ask a correctional officer. Plaintiff asked Defendant Lahr, who refused, telling Plaintiff to "F**k off." (Compl. ECF No. 1, PageID.21.) Plaintiff immediately complained to Powell about Lahr's response. The next day, Plaintiff again asked Powell for his legal property. Powell told Plaintiff that he could not have all of his legal property, but he could have some of it. Plaintiff made additional requests on March 17 and 18, 2018, without result. Plaintiff asked Defendant Conklin for his legal property on March 22, 2018, but Conklin told him to ask Powell. When Plaintiff asked Powell, she told him to ask Conklin, "because she would not give Plaintiff 'sh*t.'" (*Id.*, PageID.24.) On March 23, 2018, both Conklin and Powell denied his request for legal property. That same date, Deputy Warden Miniard (not a Defendant) told Plaintiff that he would get his legal property. Plaintiff asked two unidentified prison officials for his legal property on March 27, 2018, which they denied, allegedly causing Plaintiff to miss court-imposed filing deadlines. Plaintiff asked Deputy Warden Miniard for his legal property again on March 30, 2018, after which Plaintiff was given access to his legal property, though he could not bring it to his cell. Plaintiff complains that the property had been removed from the sealed, blue footlockers and placed, out of order, in four plastic boxes and a state duffle bag. On March 31, 2018, Plaintiff asked Defendant Elliot for his legal property to be brought to his cell. Elliot responded, "If you ask me for that sh*t again I'm going to come in there and choke you out." (*Id.*, PageID.28.) Plaintiff asked Defendant Conklin for his pending legal papers on April 2. Conklin told him to ask Powell, which he did. Defendant

Powell told him to ask the unit officers. None of the unit officers would allow Plaintiff to have his legal materials. On April 4, 2018, Plaintiff asked Defendant Watkins to retrieve his legal papers. Watkins responded that he could have them "when h*ll freezes over." (*Id.*, PageID.29.) Watkins denied another request for legal papers on April 5, 2018. Plaintiff asked Defendant Salinas for his legal property on April 6, 2018, and Salinas told him that he could not have the legal property in his cell. Two officers denied his requests on April 7 and 8, and Defendants Elliot, Salinas and Officer Jex (not a Defendant) refused to bring the property to Plaintiff's cell on April 9, 2018, though they allowed him to access the property. Plaintiff states that, on that date, he selected the allowable papers he wanted to keep in his cell. Salinas allegedly told Plaintiff that he could not have his legal property, because he had filed a grievance against Defendant Brant. On April 11, Plaintiff asked Defendant Simon for his legal documents, and she told him that she had instructed officers to let him out of his cell to get access to it. However, Correctional Officer Corbett (not a Defendant) told Plaintiff that she could not get another officer to help her escort him. Plaintiff complained to Defendant Simon the following day, but she responded, "What do you want me to do, it is not my job to give you your legal property." (*Id.*, PageID.37.) Later on April 12, when Plaintiff asked Defendant Elliot for his legal papers, Elliot responded, "F*ck off nigger, I'm going to kill your buck ass[.]" (*Id.*, PageID.38.) Plaintiff asked Sergeant Crowder (not a Defendant) for his legal property on April 13. Crowder told Plaintiff to ask Defendant Simon. On April 16, Plaintiff asked Defendant Simon for his legal materials. She responded that she would suggest it to the officers, but she could not order them to take him to look at the property. Plaintiff later told Resident Unit Manager Davis (not a Defendant) that he still had not received

his legal property. Davis responded that she would check into the matter, but Plaintiff did not receive his documents.

In addition, Plaintiff's placement in the Start Unit prevents him from physically going to the law library, forcing Plaintiff to use the segregation-law-library-request form (Form CSJ-601), on which he must identify the exact case or cases he wants, without being able to conduct legal research. Plaintiff gave Defendant Powell a CSJ-601 form on March 26, 2018, but Powell allegedly never submitted it. Plaintiff continued to give CSJ-601 forms to Defendant Powell, but they were never submitted, ostensibly preventing Plaintiff from accessing the courts. On March 28, Defendant Powell refused to mail Plaintiff's legal mail addressed to the federal court, saying, "I don't like you, you have a bad attitude." Moreover, according to Plaintiff, his placement in Unit 2, B Wing, causes his legal papers to be placed at risk of flooding from overflowing toilets in the unit. He has had some of his papers damaged by the conditions. Plaintiff alleges that all ICF Defendants are aware that the unit experiences periodic flooding, but they failed to take action to prevent it.

Further, Plaintiff alleges a series of prison conditions that purportedly violate his rights under the Eighth Amendment. When he first arrived at his cell, the cell was filthy with blood, feces, and mucus, which Plaintiff was forced to clean without protective gloves. Moreover, according to Plaintiff, his placement in Unit 2, B Wing, causes his legal papers to be placed at risk of flooding from overflowing toilets in the unit. Plaintiff had some of his papers damaged by flooding, and Defendant Watkins was aware of the risk of flooding. Plaintiff's cell also contains no desk chair, forcing him to sit on his footlocker to eat, write, or prepare a document. The seating arrangement puts the desk level just below Plaintiff's chin, causing him to sit in a twisted position,

inducing neck pain and hemorrhoids. Plaintiff has asked to see a doctor for his symptoms, but has received no medical care. The cell allegedly is cold, causing him to either wear numerous layers of socks or to stay under his blankets to keep warm. The drains in the unit do not work well, the toilets flush only twice per hour, and mentally ill neighbors sometimes urinate through their doors, all of which cause Plaintiff to experience nausea from the odors. On March 20, 2018, Plaintiff sent two bags of laundry for washing. Unknown officers did not return his clothing, so he had no clean clothing for 11 days. In addition, Plaintiff complains that he was issued a prescription for Naproxen by Dr. Roger Gerlach (not a Defendant), despite having never met nor been examined by Gerlach. Further, Plaintiff complains that prison officials unlawfully "search" his incoming legal envelopes with a fluoroscope.

On March 19, 2018, Plaintiff filed several grievances: (1) No. ICF/2018.03/0393/28C against Defendant Lahr for retaliation and violations of due process; (2) an unnumbered grievance against Defendant Powell for denial of right to redress of grievances and violation of the Eighth Amendment; and (3) a second unnumbered grievance against Powell for violations of the Eighth Amendment, apparently for not providing indigent hygiene items to Plaintiff. Plaintiff filed a third grievance against Powell on March 20 for not providing envelopes for purported court-imposed deadlines. On March 21, Plaintiff filed a grievance against Defendant Brant for not allowing him to have his blue legal footlockers. Plaintiff filed yet another grievance against Defendant Powell on March 22, alleging that Powell had refused to file grievances given to him by Plaintiff, thereby preventing Plaintiff from exhausting his administrative remedies and denying him access to the courts. Plaintiff filed a fourth grievance against Defendant Powell on March 26, 2018, for allegedly denying his First and Fourteenth Amendment rights by arbitrarily

depriving Plaintiff of his "formal ceremonial procedure religious property" without a hearing. (*Id.*, PageID.25.) On March 29, 2018, Plaintiff filed a fifth grievance against Powell for allegedly violating his First and Fourteenth Amendment rights by refusing to send his legal mail, despite accepting mail from similarly situated prisoners. Defendant Powell never submitted the grievance Plaintiff handed her. He filed a sixth grievance against Powell on March 30, 2018, for not submitting the grievance. On April 3, 2018, Plaintiff filed a grievance against Defendant Watkins for allegedly telling him to be quiet when he complained about a woman guard watching him when he was naked in the shower. Shortly after he filed his grievance, Defendant Watkins denied Plaintiff access to the exercise yard. Later that day, Watkins stated, "I've read those grievances you've been writing against my co-workers. What you do to one of us you do to all of us. Don't ask me for that legal sh*t either, because you're not getting it you d*ck." (*Id.*, PageID.29.) Plaintiff filed another grievance against Watkins on April 4, 2018, for not allowing him to have his legal property. Plaintiff filed a seventh grievance against Defendant Powell on April 6, 2018, alleging that Powell had denied his rights under the First Amendment by retaliating against him and denying him his right to petition government. Plaintiff filed a grievance against Defendant Salinas on April 9, 2018, alleging deprivations under the First Amendment. Plaintiff wrote a grievance against Officer Jex (not a Defendant) on April 10, 2018, and he gave the grievance to Defendant Simon. On April 13, 2018, Plaintiff received receipts for six grievances, all of which were dated as received on April 2 or April 5, 2018, despite the fact that some of them were submitted as early as March 19, 2018.

On April 9, 2018, Defendant Salinas wrote a Class II misconduct ticket against Plaintiff for disobeying a direct order; Defendant Watkins wrote a Class II misconduct ticket based

on Plaintiff's refusal to give his denture cup to Watkins. That same date, Officer Jex wrote a minor misconduct for destruction or misuse of property. Plaintiff alleges that both tickets were fabricated, though he later states that he was "forced" to engage in "peaceful protest" and "non-violent civil disobedience[,]" presumably referring to his refusal to give obey orders to give Watkins his denture cup. (*Id.*, PageID.40.) On April 10, 2018, Defendant Conklin wrote a major misconduct ticket against Plaintiff for threatening behavior, based on an allegation that Plaintiff had stated, "[F]*ck that honkey Sgt. Salinas, her a*s better watch out when I get out of this cell I'm gonna choke the sh*t out of her . . . . " (Compl., ECF No. 1, PageID.36.) Plaintiff contends that Conklin's misconduct charge also was fabricated. Plaintiff was placed on food loaf for refusing to give Watkins and Salinas his denture cup. He contends that the food-loaf-restriction request form was not properly completed or approved. Plaintiff alleges that white prisoners who destroyed their serving trays were not placed on food loaf. He also alleges that the food loaf was nutritionally inadequate.

Plaintiff alleges that the actions of the ICF officials were motivated by racial discrimination, in violation of the Equal Protection Clause, because all of the named officers are white and Plaintiff is black. Plaintiff argues that he was treated differently than inmate Kearns, who was housed in the same unit, but was given his legal property. He also alleges that the actions of all Defendants except Washington and Simon were taken in retaliation for his filings of grievances. Further, he complains that the lack of access to his legal materials interfered with his right to access the courts. In addition, he argues that he was deprived of his footlockers and legal envelopes without due process and just compensation. He also alleges that he was deprived of due process before ICF officials examined his legal mail with a fluoroscope.

Plaintiff seeks declaratory and injunctive relief, together with compensatory and punitive damages.

II.  Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 679.  Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief."  *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Access to the Courts

Plaintiff contends that he has been denied access to the courts by all Defendants, both because policies governing the Start Unit prevent him from possessing his legal property in his cell and because the individual Defendants denied him access to his legal property on a series of dates between March 13, 2018, and the date he filed his complaint, April 24, 2018. Plaintiff also suggests that his inability to access the law library, caused by both Defendant Washington's policy governing the Start Unit and Powell's refusals to forward Plaintiff's law library requests, interfered with his right of access to the courts. Further, he complains that Defendant Powell interfered with his right to access the courts by not approving his indigent request for large envelopes with which to organize his legal materials. In addition, he argues that Defendant Powell's delays or interference with his grievance filings deprived him of access to the courts.

It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners. *Id.* at 817. The Court further noted that in addition to law libraries

11

or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them." *Id.* at 824-25. The right of access to the courts also prohibits prison officials from erecting barriers that may impede the inmate's access to the courts. *See Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992).

An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit. In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351-53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc). Moreover, the underlying action must have asserted a non-frivolous

claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous).

In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 416.

### 1. interference with litigation

Plaintiff indicates that Defendants' actions interfered with his lawsuits in the following cases: (1) *Jackson v. Feliciano*, No. 2:17-cv-77 (W.D. Mich.); (2) *Jackson v. Evans*, No. 2:11-cv-13524 (E.D. Mich.)[2]; (3) *Jackson v. Bouchard*, 2:16-cv-246 (W.D. Mich.); (4) *Jackson v Berghuis*, No. 15-cv-11622 (E.D. Mich.); (5) *Jackson v. Kokko*, No. 2:18-cv-15 (W.D. Mich.); (6) *Jackson v. Bastian*, No. 2:18-cv-16 (W.D. Mich.); (7) *Jackson v. Coronado*, No. 2:18-cv-19 (W.D. Mich.); (8) *Jackson v. Evans*, No. 09-003770-01-CK (3d Mich. (Wayne) Cir. Ct.); and (9) *Jackson v. Mich. Dep't of Corr.*, No. 17-6767-AA (12th Mich. (Baraga/Houghton/Keweenaw) Cir. Ct.).

Plaintiff fails to demonstrate actual injury arising out of the actions of any Defendant to any of his pending cases. In *Jackson v. Feliciano*, No. 2:17-cv-77, during the period covered by the complaint (between March 13 and April 24, 2018), Plaintiff was able to file a

---

[2] Plaintiff lists some case names without providing case numbers. Where appropriate, the Court has inserted case numbers related to the case names, as reflected on the electronic case managements systems of this Court and the Eastern District of Michigan.

motion to produce his legal property and a motion seeking a preliminary injunction to release his legal property on March 26, 2018, and April 3, 2018, respectively. (2:17-cv-77, ECF Nos. 58, 60.) Although both motions were denied by the Court, Plaintiff obviously was not impaired in his ability to access the courts in Case No. 2:17-cv-77 through April 2, 2018.

On April 6, 2018, Defendants Feliciano and Pokley filed a motion for summary judgment on the grounds of exhaustion. (2:17-cv-77, ECF No. 62.) Plaintiff has not yet filed a response to the motion, ostensibly because he was denied access to his legal property by Defendant Salinas on April 9, by Defendant Simon on April 11 and 16, and by Defendant Elliot on April 12, 2018; because Defendant Washington's policy prevented him having his property in his cell; and because Defendant Powell refused to forward his library requests.

The four specific incidents of alleged interference occurred during the first ten days after the filing of the motion for summary judgment, well before Plaintiff's response was due. Plaintiff cannot demonstrate that his failure to file a response to the motion for summary judgment was caused by Defendants' refusals to allow him access to his property between April 6, 2018, and April 16, 2018. He has had nearly three months since April 16, 2018, in which to file some sort of response to the motion for summary judgment, but he has filed nothing, nor has he explained what prevents him from doing so. In addition, Rule 56 if the Federal Rules of Civil Procedure expressly permits a nonmovant to respond to a motion for summary judgment with an "affidavit or declaration [showing] that, for specified reasons, it cannot present facts essential to justify its opposition . . . ." *Id.* Such a response would not require Plaintiff to access his legal materials, yet he has neither filed such an affidavit nor informed the court of the problem.

Moreover, notwithstanding his claims that his access to the courts was being impeded in case No. 2:17-cv-77, Plaintiff apparently faced no obstacle in filing a 58-page complaint in this case on April 24, 2017, in which he complains about the very problems he has failed to raise in Case No. 2:17-cv-77. Under these circumstances, Plaintiff fails to demonstrate that his inability to access his legal material between April 6, 2018, and April 16, 2018, caused actual injury to Case No. 2:17-cv-77. For the same reasons, Plaintiff fails to demonstrate that the Start Unit policy and Defendant Powell's refusals to deliver library requests caused actual injury to the case.

Next, none of the Defendants' alleged actions could have interfered with Plaintiff's right to access the courts in *Jackson v. Evans*, No. 2:11-cv-13542, because the Eastern District of Michigan dismissed the case on August 31, 2011, many years before the alleged deprivations. Similarly, in *Jackson v. Bouchard*, No. 2:16-cv-246, this Court dismissed the action for failure to state a claim on December 21, 2016 (2:16-cv-246, ECF Nos. 11, 12), and the Sixth Circuit denied Plaintiff's claims on appeal and affirmed this Court's dismissal on August 30, 2017 (2:16-cv-246, ECF No. 37). Plaintiff successfully filed a petition for writ of certiorari to the United States Supreme Court, and that filing was placed on the Supreme Court's docket for April 3, 2018. Although the Supreme Court denied certiorari in June 4, 2018, (2:16-cv-246, ECF No. 45), Plaintiff fails to demonstrate that, between March 13 and April 24, 2018, he was required to file any motion or brief in the case. He therefore cannot demonstrate interference with his right to access the courts.

*Jackson v Berghuis*, No. 2:15-cv-11622 (E.D. Mich.), is a habeas corpus action that was stayed until June 15, 2018, while Mr. Jackson attempted to exhaust certain previously

unexhausted constitutional claims in the state courts. On June 15, 2016, the court issued an opinion and order reopening the habeas action, ordering service of the order on the respondent, and setting deadlines for the filing of the amended petition, response, and reply. No action was required in the Eastern District of Michigan during the dates of alleged interference by Defendants, as the habeas case was stayed. Moreover, from the docket entries in the Eastern District case, it is apparent that Plaintiff has been able to litigate notwithstanding the lack of possession of all of his legal materials. Plaintiff filed two letter-motions on January 17 and March 8, 2018, – before his transfer to ICF – seeking an order directing the MDOC to place him in the legal-writer program. The court denied those motions on March 21, 2018. On May 14, 2018, Plaintiff filed a motion to compel the same relief. No intervening filings in the case required Plaintiff to take additional action. The recited history undermines Mr. Jackson's contention that the lack of legal papers caused him actual injury in Case No. 2:15-cv-11622.

Plaintiff's next three pending cases (*Jackson v. Kokko*, No. 2:18-cv-15; *Jackson v. Bastian*, No. 2:18-cv-16; and *Jackson v. Corondao*, No. 2:18-cv-19) have recently been screened and ordered served or partially served. Plaintiff was not required to take action in the cases between March 13 and April 24, 2018. Indeed, he is not required to take any action now and is under no pending deadlines in the cases. Moreover, despite Plaintiff's expressed intent to file a motion for summary judgment in at least one of these cases, such a motion would be premature, given that Defendants have not yet been served and have not appeared. As a consequence, Plaintiff fails to allege that he has suffered actual injury to his right to access the courts in these cases.

In his next recited case, *Jackson v. Mich. Dep't of Corr.*, No. 17-6767 (12th Mich. Cir. Ct.), Plaintiff filed an appeal from the March 23, 2018, dismissal of his action on May 15,

2018, which was pending before the Michigan Court of Appeals at the time Plaintiff filed his complaint. *See* Mich. Ct. App. Electronic Dkt., http://courts.mi.gov/opinions_orders/case_search/ pages/default.aspx?SearchType=1&CaseNumber=343847&CourtType_CaseNumber=2 (last visited on July 12, 2018). Plaintiff does not explain how his lack of possession of legal materials between March 13 and April 24, 2018, has affected the case, given that he was able to timely appeal the trial court's March 23, 2018, decision. Moreover, Plaintiff utterly fails to allege facts suggesting that the case is a nonfrivolous action of the type described by *Lewis*, as required by *Christopher*, 536 U.S. at 415 (citing *Lewis*, 518 U.S. at 353 & n.3). Indeed, Plaintiff makes no allegation about the nature of his action. For both reasons, he fails to show actual injury that would support his access-to-the-courts claim.

Finally, to the extent that Plaintiff alleges that he was deprived on his right to access the courts in *Jackson v. Evans*, No. 09-003770-01-CK, Plaintiff's original criminal case, he cannot demonstrate that he is suffering actual injury, as he does not allege facts suggesting that he is under any present deadline in that court. In fact, Plaintiff indicates that the alleged actual injury involved an attempt to obtain relief in his 2009 criminal conviction by alleging that he is imprisoned due to a fraud upon the court. Such a motion has no basis in Michigan law and is frivolous.

In sum, Plaintiff fails to allege facts demonstrating that any Defendant's actions affected his right to access the courts in any of his pending actions.

### 2. interference with grievance process

Plaintiff complains that Defendant Powell denied him access to the courts when she failed to submit, or submitted late, certain grievances Plaintiff wished to file. Even if Plaintiff was

improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances, and he therefore cannot demonstrate the actual injury required for an access-to-the-courts claim. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (requiring actual injury); *Bounds v. Smith*, 430 U.S. 817, 821-24 (1977). The exhaustion requirement only mandates exhaustion of *available* administrative remedies. *See* 42 U.S.C. § 1997e(a) (emphasis added). If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. *See Ross v. Blake*, 136 S. Ct. 1850, 1858-59 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio,* 20 F. App'x 469, 470 (6th Cir. 2001). As a consequence, Plaintiff fails to state a claim against Defendant Powell for interfering with or failing to respond to his grievances.

### 3. denials of envelopes to organize legal materials

Plaintiff appears to allege that Defendant Powell's denials of Plaintiff's requests for large envelopes to organize his legal materials deprived him of his right of access to the courts. Although *Bounds*, 430 U.S. at 824-25, held that prison officials have a duty to provide minimal items necessary to access the courts – such as pens, paper, mailing envelopes, and stamps – the courts have never recognized an indigent prisoner's right to be provided large envelopes or other organizing materials free of charge. Moreover, Plaintiff utterly fails to allege that the lack of organizing envelopes interfered in any way with his ability to access the courts in any one of his many pending lawsuits. He therefore fails to allege actual injury to a nonfrivolous action.

**B.     Eighth Amendment**

Plaintiff raises a series of Eighth Amendment claims based on his conditions of confinement:  his cell was filthy when he arrived, and he had to clean it without gloves; Unit 2, B Wing floods frequently, because mentally ill prisoners block the toilets; he does not have a chair in his cell; he has not received medical care for his neck pain and hemorrhoids; he was forced to eat nutritionally inadequate food loaf; his cell is cold; he is subjected to foul smells of urine and feces; he did not have clean clothes for 11 days; he was not seen by a doctor for his neck pain and hemorrhoids; and a doctor issued a prescription without examining Plaintiff.  Plaintiff contends that all ICF Defendants are aware that Unit 2 floods periodically, but they failed to prevent Plaintiff from suffering the effects of the flooding.  Plaintiff also alleges that, on March 30 and April 12, 2018, Defendant Elliot threatened to hurt him if he did not stop asking for his papers.  In addition, Plaintiff alleges that Defendant Powell refused to provide Plaintiff with indigent hygiene items on March 19, 2018.  Further, Plaintiff alleges that on April 10, 2018, Defendants Conklin and Elliot denied Plaintiff access to the exercise yard and denied him laundry service.  Finally, Plaintiff generally alleges that his Eighth Amendment rights were violated by Defendant's denials of his legal property and envelopes for organizing his legal materials.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes.  Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency."  *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981).  The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain."  *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346).  The deprivation alleged must result in the denial

of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)).

Plaintiff fails to make specific factual allegations about how any Defendant in this action was involved in the alleged deprivations, with the exception of the following: Defendant Powell refusing to provide Plaintiff indigent hygiene items on March 19, 2018; Defendants Conklin and Elliot denying him access to the exercise yard and laundry on April 10, 2018; Defendant Elliot making threats; and various Defendants denying him his legal property and envelopes for organizing that property. He also appears to allege that the remaining Defendants may be liable for their failures to supervise their subordinates or to respond adequately to Plaintiff's grievances.

Defendant Elliot's verbal threats do not rise to the level of an Eighth Amendment claim. Allegations of verbal harassment or threats by prison officials toward an inmate do not

constitute punishment within the meaning of the Eighth Amendment. *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir.1987). Nor do allegations of verbal harassment rise to the level of unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *Id.* Even the occasional or sporadic use of racial slurs, although unprofessional and reprehensible, does not rise to a level of constitutional magnitude. *See Torres v. Oakland County*, 758 F.2d 147, 152 (6th Cir. 1985).

Moreover, neither Defendant Powell's denial of hygiene items on one occasion nor Defendant Conklin's and Defendant Elliot's denial of yard and laundry on one occasion rise to the level of an Eighth Amendment violation. Allegations about temporary inconveniences, e.g., being deprived of a lower bunk, subjected to a flooded cell, or deprived of a working toilet, do not demonstrate that the conditions fell beneath the minimal civilized measure of life's necessities as measured by a contemporary standard of decency. *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *see also J.P. v. Taft*, 439 F. Supp. 2d 793, 811 (S.D. Ohio 2006) ("[M]inor inconveniences resulting from the difficulties in administering a large detention facility do not give rise to a constitutional claim." (internal citation omitted)). *But see Flanory v. Bonn*, 604 F.3d 249, 255-56 (6th Cir. 2010) (holding that allegations that an inmate was deprived of toothpaste for 337 days and experienced dental health problems did not constitute a temporary inconvenience and were sufficient to state an Eighth Amendment claim). Plaintiff's alleged temporary deprivations of hygiene items, exercise yard, and laundry service amount to minor inconveniences that do not rise to the level of an Eighth Amendment violation.

For the same reasons, Plaintiff's claims concerning other Defendants' failures to supervise Powell, Conklin, and Elliot or to respond to Plaintiff's grievances about the alleged deprivations fail to state a claim. In addition, the claims concerning supervision and grievance

responses fail for another reason. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs*., 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that any Defendant engaged in active unconstitutional behavior in relation to the above claims, with the exception of Defendant Elliot's threats, Defendant Powell's denial of hygiene items on March 19, 2018, and the actions of Defendants Conklin and Elliot on April 10, 2018, denying Plaintiff access to the yard and to laundry service.

Finally, Plaintiff's allegations concerning the denials of his legal property and envelopes fall far short of the barbarous conditions prohibited by the Eighth Amendment. *Rhodes*, 452 U.S. at 345-46. Deprivations of legal materials are not "conditions intolerable for prison confinement," such as "essential food, medical care, or sanitation." *Id.* at 348. As a result, such deprivations are not protected by the Eighth Amendment.

**C.      Due Process**

Plaintiff alleges that he was deprived of his blue footlockers and the envelopes from his legal mail without compensation, in violation of his right to due process.  He also appears to allege that certain actions taken by various Defendants violated prison policy, possibly in violation of Plaintiff's right to due process.  Finally, he alleges that his due process rights were violated by prison officials' use of a fluoroscope to examine legal mail.

Plaintiff's due process claim concerning the taking of his property is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986).  Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy.  If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law."  *Parratt*, 451 U.S. at 537.  This rule applies to both negligent and intentional deprivation of property, as long as the deprivation was not done pursuant to an established state procedure.  *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984).  Because Plaintiff's claim is premised upon allegedly unauthorized acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies.  *See Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993).  Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action.  *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not sustained his burden in this case.  Plaintiff has not alleged that state post-deprivation remedies are inadequate.  Moreover, numerous state post-deprivation remedies are available to him.  First, a prisoner who incurs a loss through no fault of his own may petition

the institution's Prisoner Benefit Fund for compensation. Mich. Dep't of Corr., Policy Directive 04.07.112, ¶ B (effective Dec. 12, 2013). Aggrieved prisoners may also submit claims for property loss of less than $1,000 to the State Administrative Board. Mich. Comp. Laws § 600.6419; MDOC Policy Directive 03.02.131 (effective Oct. 21, 2013). Alternatively, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments, commissions, boards, institutions, arms, or agencies." Mich. Comp. Laws § 600.6419(1)(a). The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff does not allege any reason why a state-court action would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property. Accordingly, Plaintiff's due process claims concerning his footlockers and envelopes fail to state a claim.

Further, Defendants' alleged failures to comply with an administrative rule or policy do not themselves rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectible liberty interest). Section 1983 is addressed to remedying violations of federal law, not state law. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Laney*, 501 F.3d at 580-81.

Finally, Plaintiff complains that unspecified prison officials use a fluoroscope to scan his legal mail, allegedly violating his right to due process. A fluoroscope is "a machine that

24

uses X-rays to case shadows of the internal structure of people, animals, raw material, welds, etc. on a fluorescent screen: the shadows vary in intensity according to the density of the object or part." Webster's New World College Dictionary (4th ed. 2010). Such x-ray scanners frequently are used to scan luggage at airports and to detect explosives, chemical and biological threats, weapons, and drugs in mail or packages. *See, e.g.,* Mailroom Security product information, http://www.mailroom-security.com/ (last visited May 22, 2018); CorrectionsOne newsletter, "Fight the flow of contraband by securing mail and deliveries," https://www. correctionsone.com/products/facility-products/bodyscanners/articles/293820187 Fight-the-flow-of-contraband-by-securing-mail-and-deliveries (last visited May 22, 2018).

Plaintiff appears to argue that he has a substantive due process right to receive his incoming legal mail without having it scanned for the presence of dangerous substances or objects. "Substantive due process prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty." *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002). "Substantive due process serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman v. Cuyahoga Cty. Dep't of Children & Family Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)). "Conduct shocks the conscience if it 'violates the "decencies of civilized conduct."'" *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 846-47 (1998) (quoting *Rochin v. California*, 342 U.S. 165, 172-73 (1952))). The Sixth Circuit has held that framing an inmate by planting evidence may violate substantive due process where a defendant's conduct shocks the conscience and constitutes an "egregious abuse of

governmental power." *Cale v. Johnson*, 861 F.2d 943, 950 (6th Cir. 1988), *overruled in other part by Thaddeus-X v. Blatter*, 175 F.3d 378, 388 (6th Cir. 1999); *see also Davis v. Gallagher*, No. 1:16-cv-1405, 2016 WL 7403941, *4 (W.D. Mich. Dec. 22, 2016); *Robinson v. Schertz*, No. 2:07-cv-78, 2007 WL 4454293 (W.D. Mich. Dec. 14, 2007).

"Where a particular [a]mendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that [a]mendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing such a claim." *Albright v. Oliver*, 510 U.S. 266, 266 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)) (holding that the Fourth Amendment, not substantive due process, provides the standard for analyzing claims involving unreasonable search or seizure of free citizens, and the Eighth Amendment provides the standard for such searches of prisoners)).  If such an amendment exists, the substantive due process claim is properly dismissed.  *Heike v. Guevara*, 519 F. App'x 911, 923 (6th Cir. 2013).

 The Supreme Court long has recognized that prisoners retain First Amendment rights to send and receive mail, subject to prison regulations that are "reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987) (addressing incoming correspondence).  Plaintiff's substantive due process claim therefore will be dismissed.    The Court, however, will consider whether the alleged denial of incoming legal mail violated Plaintiff's first Amendment rights.

Incoming mail unquestionably poses a greater threat to prison order and security than outgoing mail. *Thornburgh v. Abbott*, 490 U.S. 401 (1989); *Turner*, 482 U.S. 78.  However, when the incoming mail is "legal mail," the Sixth Circuit has recognized "heightened concern with

allowing prison officials unfettered discretion to open and read an inmate's mail because a prison's security needs do not automatically trump a prisoner's First Amendment right to receive mail, especially correspondence that impacts upon or has import for the prisoner's legal rights, the attorney-client privilege, or the right of access to the courts." *Sallier v. Brooks*, 343 F.3d 868, 874 (6th Cir. 2003); *see also Kensu v. Haigh*, 87 F.3d 172, 174 (6th Cir. 1996) ("The right of a prisoner to receive materials of a legal nature, which have impact upon or import with respect to that prisoner's legal rights and/or matters, is a basic right recognized and afforded protection by the courts. . . ."); *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003) ("In balancing the competing interests implicated in restrictions on prison mail, courts have consistently afforded greater protection to legal mail than to non-legal mail. . . .").

In balancing the prisoner's rights with prison needs, the courts have approved prison policies that allow prison officials to open "legal mail" and inspect it for contraband in the presence of the prisoner. *See, e.g., Wolff v. McDonnell*, 418 U.S. 539, 577 (1974) (upholding such a policy against a Sixth Amendment attorney-client privilege claim and a Fourteenth Amendment due process claim based on access to the courts). In *Knop v. Johnson*, 977 F.2d 996, 1012 (6th Cir. 1992), the Sixth Circuit approved an opt-in system in which prison officials could open any mail sent to a prisoner unless the prisoner affirmatively requested that "privileged mail," defined by the policy as mail sent by a court or by counsel, be opened in his presence. *Id.*; *see also Sallier*, 343 F.3d at 874. In addition, as the Sixth Circuit has recognized,

> Not all mail that a prisoner receives from a legal source will implicate constitutionally protected legal mail rights. . . [E]ven mail from a legal source may have little or nothing to do with protecting a prisoner's access to the courts and other governmental entities to redress grievances or with protecting an inmate's relationship with an attorney.

*Sallier*, 343 F.3d at 874. When mail from a legal source implicates either of these interests, that interest must be balanced against the interests in prison security and administration. *Id.* To determine that balance, the Court must assess an official's actions by reference to the following factors: (1) whether there exists a valid, rational connection between the prison regulation and the legitimate governmental interest; (2) whether there remain alternative means of exercising the right; (3) the impact that accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and (4) whether there are ready alternatives available that fully accommodate the prisoner's rights at de minimis cost to valid penological interests. *Turner*, 482 U.S. at 89-90; *see also Thornburgh*, 490 U.S. at 414-19.

Here, Plaintiff does not suggest that he was deprived of any piece of mail or that officials improperly opened and read his legal mail. Instead, he simply complains that mailroom officials subjected his sealed legal mail to fluoroscope inspection. Plaintiff does not even allege that any writing is visible under such an inspection, much less that officials actually read his legal mail. Under these circumstances, Plaintiff has not alleged that he was deprived of any right to his legal mail. As a consequence, there exists no deprivation against which to weigh the penological need.

Further, Plaintiff utterly fails to allege that any Defendant in this action participated in the screening process. As a consequence, Defendants cannot be held liable for the allegedly unconstitutional behavior. *Iqbal*, 556 U.S. at 676; *Monell*, 436 U.S. at 691.

For these reasons, Plaintiff's due process claims and related First Amendment claim will be dismissed for failure to state a claim.

### D. Retaliation

Plaintiff alleges that all Defendants except Defendants Washington and Simon retaliated against him for filing grievances and lawsuits against various correctional officers. Plaintiff complains about the following allegedly retaliatory acts: Plaintiff was placed in Unit-2, B-wing, in a filthy cell in the Start Unit, upon his arrival at ICF; Defendant Brant denied him his legal papers on March 15, 2018; Defendant Lahr refused to provide Plaintiff his legal property on March 15, 2018; Defendant Powell failed to ensure that Defendant Lahr gave Plaintiff his legal papers on March 19, 2018; Defendant Powell denied Plaintiff envelopes on March 20 and March 23, 2018; Brant denied him his blue footlockers; Defendant Conklin refused to give him his legal property on March 22, 2018; Defendant Elliot denied him his legal materials on March 30, 2018, and threatened to attack Plaintiff if he asked again, because Plaintiff had already filed too many papers against correctional officers; Defendant Watkins denied Plaintiff his legal papers on April 3, 2018, stating that Plaintiff had filed to many grievances against Watkins' coworkers; Defendant Powell informed Plaintiff on April 6, 2018, that he would not get his legal property until he respected officers and stopped filing grievances; on April 9, 2018, Defendant Salinas told Plaintiff that he could not have his legal property because he filed a grievance against Defendant Brant; and on April 10, 2018, Defendants Conklin and Elliot denied Plaintiff access to the exercise yard and denied him laundry service. (Compl., ECF No. 1, PageID.48-51.)

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was

motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff's first allegation of retaliation, that he was placed in a dirty cell when he arrived at ICF, fails at the outset because Plaintiff makes no allegation that any Defendant in the action engaged in active conduct related to the decision to place Plaintiff in the particular cell. *Iqbal*, 556 U.S. at 676; *Monell*, 436 U.S. at 691; *Grinter* 532 F.3d at 575-76; *Greene*, 310 F.3d at 899. Moreover, Plaintiff's claim that the action was retaliatory is wholly conclusory. It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *Vega v. DeRobertis*, 598 F. Supp. 501, 506 (C.D. Ill. 1984), *aff'd*, 774 F.2d 1167 (7th Cir. 1985). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Skinner v. Bolden*, 89 F. App'x 579, 579-80 (6th Cir. 2004) (without more, conclusory allegations of temporal proximity are not sufficient to show a retaliatory motive). Plaintiff merely alleges the ultimate fact of retaliation in this action. He has not presented any facts to support his conclusion that any Defendant placed him in a dirty cell because he filed a grievance against some unnamed officer at a different institution. Accordingly, his speculative allegation about his cell placement fails to state a retaliation claim.

With respect to Plaintiff's numerous allegations that Defendants retaliated against him for filing grievances and lawsuits by depriving him of his legal materials, the Court concludes at this juncture that Plaintiff has sufficiently stated actionable claims against Defendants Powell, Brant, Lahr, Conklin, Salinas, Elliot, and Watkins. The Court therefore will order service of Plaintiff's retaliation claims on these Defendants.

**E.      Equal Protection**

Plaintiff, who is African American, alleges that a white prisoner, inmate Kearns, received his legal property earlier than Plaintiff. Plaintiff also suggests that unspecified white prisoners broke their meal trays but were not placed on food loaf. He contends that the disparate treatment violated his rights under the Equal Protection Clause.

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const., amend. XIV; *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). When a law adversely impacts a "suspect class" such as one defined by race, alienage, or national origin, or invades a "fundamental right" such as speech or religious freedom, the rigorous "strict scrutiny" standard ordinarily governs, whereby such laws "will be sustained only if they are suitably tailored to serve a compelling state interest." *City of Cleburne*, 473 U.S. at 440. However, while a convicted prisoner does not forfeit all constitutional protections by virtue of his confinement, "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights . . . ." *Price v. Johnston*, 334 U.S. 266, 285 (1948). "The limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives – including deterrence of crime, rehabilitation of prisoners, and institutional security."

*O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (citing, *inter alia*, *Turner v. Safley*, 482 U.S. 78, 84 (1987)).

To establish a violation of the Equal Protection Clause, an inmate must show that the defendants purposefully discriminated against him. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977). Such discriminatory purpose must be a motivating factor in the actions of the defendants. *Id.* at 265-66. "A plaintiff presenting a race-based equal protection claim can either present direct evidence of discrimination, or can establish a prima facie case of discrimination under the burden-shifting scheme set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Umani v. Mich. Dep't of Corr.*, 432 F. App'x 453, 458 (6th Cir. 2011).

Plaintiff's allegations of discriminatory treatment are conclusory. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Plaintiff fails to allege sufficient facts to support a claim of intentional race discrimination by either direct or indirect evidence. *See Davis v. Prison Health Servs.*, 679 F.3d 433, 440 (6th Cir. 2012) (discussing the distinction between direct and indirect methods of proving discrimination). First, Plaintiff alleges no facts constituting direct evidence of discriminatory motive or purpose between his treatment and that of Kearns and other white inmates. *See Umani v. Mich. Dep't of Corr.*, 432 F. App'x 453, 458 (6th Cir. 2011) (citing *Johnson v. Kroger Co.*, 319 F.3d 858, 865 (6th Cir. 2003)); *see also Davis*, 679 F.3d at 440.

Second, Plaintiff fails to allege a *prima facie* claim under the indirect, burden-shifting framework of *McDonnell Douglas v. Green*, 411 U.S. 792 (1973). He fails to allege that the inmate Kearns was similarly situated in all relevant respects. *See Umani*, 432 F. App'x at 458.

To be a similarly-situated person member of another class, "the comparative [prisoner] 'must have dealt with the same [decisionmaker], have been subject to the same standards, and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or their employer's treatment of them for it.'" *Umani*, 432 F. App'x at 460 (quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998)). Although Plaintiff alleges that Kearns was a white prisoner in the same unit, he makes no allegations concerning whether Kearns was in the Start Program and, if so, whether Kearns was at the same level of the program or whether he had advanced, entitling him to different privileges. In addition, Plaintiff does not allege whether Kearns possessed an excessive amount of legal property, as Plaintiff admits he did, or whether Kearns was similarly situated to Plaintiff in any other respect.

Plaintiff's allegations concerning disparate treatment of white prisoners with respect to placement on food loaf are even more conclusory. Plaintiff does not identify any specific similarly situated white inmate who was treated differently from Plaintiff by the same decisionmaker under the same circumstances. Indeed, Plaintiff expressly alleges that unidentified others committed different violations, and he fails to identify the decisionmakers in question. He therefore fails to state a claim under the Equal Protection Clause. *Umani*, 432 F. App'x at 460.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c), the Court determines that Defendant Washington will be dismissed for failure to state a claim. In addition, the Court will dismiss Plaintiff's access-to-the-courts, Eighth Amendment, due process, and equal protection

claims for failure to state a claim.  The Court will serve the remaining portions of the complaint against Defendants Powell, Brant, Lahr, Conklin, Salinas, Elliot, Watkins, and Simon.

An Order consistent with this Opinion will be entered.


Dated:    August 6, 2018          /s/ Robert J. Jonker
                                  ROBERT J. JONKER
                                  CHIEF UNITED STATES DISTRICT JUDGE